UNITED STATES, for Use and Benefit of
W. A. RUSHLIGHT CO. et al. v.
DAVIDSON et al.

No. 1583.

District Court, D. Idaho, N. D.
April 16, 1947.

Lycette, Diamond & Sylvester, of Seattle, Wash., and J. Ward Arney, of Coeur d' Alene, Idaho, for plaintiff.

Burkey & Burkey, of Tacoma, Wash., and Hawley & Hawley, of Boise, Idaho, for defendant C. F. Davidson Co.

Oscar W. Worthwine, of Boise, Idaho, for defendant Continental Casualty Co.

Henry Arnold Peterson, of Tacoma, Wash., for third-party plaintiff William J. Parker.

CLARK, District Judge.

This is an action prosecuted by the plaintiffs, W. A. Rushlight Company, Rushlight Automatic Sprinkler Company and Montgomery Electric Company, against the defendants C. F. Davidson and C. W. Reid as C. F. Davidson Company and Continental Casualty Company, with the defendant Continental Casualty Company appearing by separate answer to the complaint and cross complaint against the defendants C. F. Davidson and C. W. Reid.

Also the Continental Casualty Company prosecutes a third party complaint against William J. Parker (who was made third party defendant) for judgment for any and all amounts for which judgment may be entered herein against the defendant Continental Casualty Company and in addition, attorneys fees and costs expended by it. A cross action is also prosecuted by the Casualty Company against C. F. Davidson and C. W. Reid for the same relief as prayed for against William J. Parker.

There were several other parties to this suit appearing by complaints in intervention but through settlements made out of Court it has narrowed down so that the only remaining issues to be settled by the Court are between the parties mentioned above.

This action is authorized by Section 270a (b), Title 40 U.S.C.A. Section 270a(a) (2) makes provision for a "payment bond" by contractors engaged in building or construction work for the Government and the provisions for such payment bond operate for the "protection of all persons supplying labor and material in the prosecution of the work provided for in said contract for the use of each such person."

On or about the 13th day of January 1944 the defendants C. F. Davidson and C. W. Reid, doing business as C. F. Davidson Company, as principal contractor made and entered into a contract in writing with the United States of America wherein and whereby said C. F. Davidson Company agreed to furnish all material for and to perform the work for a certain project known as "Five Thousand Man Service School Area at the United States Naval Training Station, Farragut, Idaho," in accordance with specifications, schedules and drawings made a part of said contract, which said contract was marked and designated as "Contract N O Y–6910," and as required by the Act of Congress hereinbefore referred to, the defendants C. F. Davidson and C. W. Reid, as principals, and the defendant Continental Casualty Company, as surety, did, under date of January 13, 1944, make, issue and deliver to the United States of America a construction "payment bond," said bond being conditioned as required by said Act of Congress and guaranteeing prompt payment to all persons supplying labor and materials in the prosecution of the work provided for in said main contract aforesaid.

After the execution of the contract between C. F. Davidson Company and the United States of America, the plaintiff Rushlight Automatic Sprinkler Company entered into a sub-contract in writing with said C. F. Davidson and C. W. Reid wherein and whereby, for a consideration of $62,000, the said C. F. Davidson Company employed the plaintiff Rushlight Automatic Sprinkler Company to do and perform a portion of said main contract as follows: "To construct outside water and sewer system as called for in said main contract and its plans and specifications."

After the execution of the contract between C. F. Davidson Company and the United States of America, the plaintiff Montgomery Electric Company, on November 31, 1943 entered into a subcontract in writing to install a complete inside electrical system and outside electrical distribution system under the main contract for the price of $65,000.

After the date of April 21, 1944 the plaintiff W. A. Rushlight Company entered into a subcontract, orally, wherein and whereby for a consideration of $400,000 the defendants C. F. Davidson and C. W. Reid employed the plaintiff to perform a portion of the main contract as follows: "All the plumbing and steam distribution in connection with the construction of a five thousand man service area at U. S. Naval training station Farragut Idaho, under contract N O Y–6910 in accordance with the plans and specifications."

Although the cases were combined in one action they were presented at the trial in the following order:

1st, the claim of the Rushlight Automatic Sprinkler Company;

2nd, the claim of the Montgomery Electric Company;

3rd, the claim of the W. A. Rushlight Company.

These actions were prosecuted against C. F. Davidson and C. W. Reid doing business as C. F. Davidson Company, and the Continental Casualty Company, and

4th, the cross action prosecuted by the Continental Casualty Company against C. F. Davidson, C. W. Reid and William J. Parker.

These claims will be dealt with in this opinion in the same order in which they were presented at the trial, and in the interest of brevity, throughout this opinion, the parties will be referred to as follows: The Rushlight Automatic Sprinkler Company, as the Sprinkler Company. The Montgomery Electric Company, as Montgomery. The W. A. Rushlight Company, as Rushlight. The C. F. Davidson Company as Davidson and the Continental Casualty Company as the Bonding Company.

*The Rushlight Automatic Sprinkler Company:*

The claim of the Sprinkler Company is based on a subcontract with Davidson wherein and whereby for a consideration of $62,000 Davidson employed the Sprinkler Company to do and perform a portion of the main contract as follows: "To construct the outside water and sewer system as called for in said main contract and its plans and specifications." The Sprinkler Company claims that they fully and faithfully carried out and completed their contract prior to November 30, 1944. That they performed additional work and furnished additional material, not required under their sub-contract, pursuant to the orders, directions and requests of Davidson, at the agreed value of $18,068.82, and that by the terms of the original contract and the extra work and materials furnished Davidson owed the Sprinkler Company these amounts and admits payment from Davidson of $55,800, leaving a balance of $24,268.82.

Davidson admits the contract and admits that the Sprinkler Company furnished some additional work and material concerning which the defendant Davidson admits that the sum of $8,830.22 is a proper charge and admits that $8,414.66 was for labor and material that were not within the terms of the original plans and specifications but claim that the items embraced in this charge have not, so far, been approved by the United States Government as constituting extra labor or materials or as not being within the terms and provisions of the Sprinkler Company's sub-contract, and deny on information and belief that the amount is owing. They admit that the only amount paid to the Sprinkler Company is $55,800 but deny the balance of such claim.

Pending the trial and before the taking of testimony commenced, it was stipulated both as to the claims made by the Sprinkler Company and as to the claims made by Davidson, as follows:

| | | |
|---|---|---|
| a. Original contract price | | $62,000.00 |
| b. Materials and supplies furnished on open account | | 8,830.22 |
| c. Change Orders | | 972.79 |
| d. Rock excavation allowed | | 3,722.25 |
| e. Total admitted earned. | | $75,525.26 |
| f. Payment in cash | $55,800.00 | |
| g. Services and materials furnished by Davidson | 1,614.82 | |
| h. | | $57,414.82 |
| i. | | $18,110.44 |

This leaves the following disputed items claimed by the Sprinkler Company as being owing from Davidson:

| | |
|---|---|
| a. Extra Sewer Connection | $ 91.23 |
| b. Remodeling manholes to conform to new road grade | 120.60 |
| c. Repairs stop boxes | 402.38 |
| d. Repairs broken sewers | 209.53 |
| e. Solid rock excavation | 3,722.25 |

Davidson claims credit in the total sum of $9,324.25 and claims this amount should be deducted from any sums found due the Sprinkler Company,

Of this amount claimed by Davidson, $1,614.82 is conceded by stipulation by the Sprinkler Company, and it is credited above.

Davidson also claims that he presented to the Sprinkler Company ten invoices aggre-

gating $7,538.40. These invoices are shown as follows:

Exhibit 57, Invoice #567, $763.60
Exhibit 58, Invoice # 92, $268.84
Exhibit 59, Invoice # 91, $276.70
Exhibit 60, Invoice #478, $240.24
Exhibit 62, Invoice #205, $1493.14
Exhibit 63, Invoice #204, $1181.57
Exhibit 64, Invoice #214, $598.86
Exhibit 65, Invoice #215, $728.85
Exhibit 66, Invoice #275, $663.10
Exhibit 67, Invoice #279, $1379.32

As to the invoices listed above, the record discloses:

1. This exhibit is made up of many items, and when introduced, the Sprinkler Company admitted liability for items aggregating $398.15, leaving $365.45 still disputed. The admitted items were circled and initialed. It was further admitted by the Sprinkler Company that the charges on the remaining items were reasonable and correct but liability was denied. The balance of this item disputed by the Sprinkler Company is:

a. Repair break in Sewer between Sta. 2—57 and 0—00, Lat. 18a, amounting to $122.30, plus overhead and supervision.

b. Repair roads damaged by sewer break between Sta. 12—33 and 9—83 amounting to $95.75 plus overhead and supervision.

c. Repair sewer line break in 10″ main between manhole 2—57 and 0—00 amounting to $60.61 plus overhead and supervision.

d. Repair 6″ sewer between building 18a 16 and 10″ Lat. 18a and road repair amounting to $24.00 plus overhead and supervision.

Davidson also claims:

2. Cost of temporary building $ 268.64
3. Cost of constructing two sheds 276.70
4. Cost of special engineering water and sewer as built plans 240.40
5. Engineering for water and sewer, both inclusive 5988.82

The Court having considered the items in dispute and taking them up in the order in which they have been heretofore set forth; dealing first with the claims of the Sprinkler Company:

■ a. Extra sewer connection $91.23. The plans under which the Sprinkler Company took the contract show only one sewer connection; Davidson's superintendent determined two connections were necessary so the sprinkler company put in one extra connection in each of the four buildings at a cost of $91.23, of which $79.33 was for labor and materials and $11.90 is profit. The sub-contractor could not be expected to do this work without extra compensation and the cost as submitted was fair and reasonable. This item is allowed in full against Davidson and against the Bonding Company in the amount of $79.33 and disallowed as to the amount of $11.90 as against the Bonding Company.

■ b. Remodeling manholes to conform to new road grades $120.60, of which $92.94 is for labor and material and $27.66 is profit.

The evidence shows these manholes were built in accordance with the plans. Later a change was made in the road grade and the Sprinkler Company was ordered by Davidson's superintendent to change the manholes to conform to the new grade. The Sprinkler Company having in the first instance constructed the manholes as shown by the plans, they are entitled to be paid for making the change. This item is allowed in full as against Davidson and in the amount of $92.94 as against the Bonding Company. The item of profit in the sum of $27.66 is disallowed as to the Bonding Company.

■ c. Repair of stop boxes $402.38. This item is made up of $329.97 labor and material and $72.41 profit and overhead. These boxes were put in by the Sprinkler Company and after the job was finished, the Navy Inspector testifies, that he inspected the stop boxes (the broken boxes) and that they were constructed properly before the Sprinkler Company left the work. This was sometime in April. In July it was found that there were various boxes broken. Mr. McKenney, who was Davidson's superintendent, ordered them fixed. It cannot be determined from the record who was re-

sponsible for the breaking of the boxes, but it certainly could not be the Sprinkler Company because they had finished the work and left the job, and the job had been inspected and received. I am unable to find anywhere in the record where the defendant Davidson denies this item except in the testimony drawn from witnesses by cross-examination. The fact that this was extra work by the Sprinkler Company, after the completion of the construction of these boxes, and that Davidson ordered their repair, the Court feels that this item should be, and it is allowed in the full amount against Davidson and in the amount of $329.97 against the Bonding Company. The amount of $72.41 of this item for profit and overhead is disallowed as against the Bonding Company.

■ d. Repair of broken sewer $209.53. What has been said in regard to item c, the repair of stop boxes, can be said of this item. This is allowed in the full amount against Davidson and in the amount of $173.08 against the Bonding Company, the amount of $36.45 of this item for freight and overhead will be disallowed as against the Bonding Company.

■ e. Solid rock excavation $3722.25. As to this item, the Navy allowed Davidson $15 per yard, and that amount has been credited to the Sprinkler Company. This is a matter to be determined by the Navy. The specifications provided for extra compensation to be paid by the Government if rock, as defined therein, was encountered. The contract itself provides that a decision of the contract officer of the Navy, subject only to appeal to the Secretary of the Navy, shall be final. The Sprinkler Company were sub-contractors; they were bound to complete their sub-contract in accordance with the provisions of the main contract and with the contract documents including the specifications, so it follows that they are bound to follow the procedure fixed by that contract in the same manner as the main contractor is bound, and they have agreed to perform the work undertaken by them subject to all of the provisions and terms of the contract between Davidson and the Government. They are bound by the terms of that contract. At the time of the trial of this case this item was in dispute between the Contractor and the Government, the contractor having made claim for an additional $15 per yard. This item is disallowed with the provision, however, that any additional amount paid Davidson by the Government will be due and owing from Davidson to the Sprinkler Company.

As to the claims Davidson has presented to the Sprinkler Company for which he claims credit:

1. Cost of temporary building $268.64. This was admitted as being correct and should be charged to the Sprinkler Company. It will be allowed.

2. Cost of constructing two sheds $276.-70. This was admitted at the trial as being correct and should be charged to the Sprinkler Company. It will be allowed.

3. Cost of engineering water and sewer as built plans, invoice #478, $240.40.

4. Engineering for water and sewer $5988.82 (invoices #205; 204; 214; 215; 275 and 279).

■ Numbers 3 and 4 will be considered together. Davidson is entitled to be credited with that engineering service furnished to the Sprinkler Company. The evidence in regard to this is very unsatisfactory, and it is difficult to determine from the evidence what the value of this service is. It is necessary therefore for the Court to decide what is a reasonable and proper amount, based on the evidence in that regard as a whole. The total amount of this sub-contract, originally, was $62,000. The Court must take into consideration that this engineering service was performed by the general engineers of the Davidson Company with an overall contract to build Service School area at the original contract price of $2,088,900. The Sprinkler Company's sub-contract was only a small part of the work performed under the original contract. Engineering is generally figured on a percentage basis of the amount of the entire contract and in view of the testimony, here, of Mr. McKinney, who was Davidson's witness and employee, I feel that 2% of the amount of the sub-contract should be allowed. This item therefore will be allowed in the sum of $1240.

*Montgomery Electric Company:*

The claim of the Montgomery Electric Company is based on a sub-contract with Davidson whereby for a consideration of $65,000 Davidson employed Montgomery to do and perform a portion of the main contract as follows: "To furnish all labor and material and to perform all work necessary for the installation of a complete inside electrical system and for a complete outside electrical distribution system in connection with the construction of a 5000 man service school area at the United States Naval Training Station at Farragut, Idaho, in complete accordance with the plans and specifications and addenda governing the same."

Montgomery claims that they fully and faithfully carried out and completed their contract prior to September 31, 1944; that they performed additional work and furnished additional material not required under their sub-contract pursuant to the orders, directions and requests of Davidson, at the reasonable and agreed value of $26,254.69. Montgomery also claims that at the time the sub-contract was entered into it was contemplated and intended that the defendant's main contract would be fully completed within five months, to-wit, by at least May 1, 1944, and likewise that Montgomery's sub-contract for the electrical work would be fully completed within that period or a shorter period; that the nature of Montgomery's sub-contract was such that in order for the plaintiff to carry on the sub-contract work it was a condition precedent that the defendant keep up and maintain the original progress and completion schedule for the work on the buildings covered by the main contract; that Davidson was negligent and failed to keep the main contract work up to the original and contemplated schedule and failed and neglected to keep the main contract work moving in a proper and workmanlike manner; that Davidson's actions held up, hindered and delayed the performance of Montgomery's sub-contract so that Montgomery was unable to finish the main portion of his work until on or about September 1, 1944, and that Montgomery was delayed for a period of at least four months in excess of that originally contemplated by the parties in their contract; that the nature of the sub-contract work was such that it was reasonably necessary for Montgomery to keep at least a part of a crew on the job at all times and that by reason of the delay caused by Davidson, Montgomery was required to keep on the job for an extra and additional four months:

1. Superintendent at a cost of $600 per month, or a total of $2400.

2. A general foreman at a cost of $500 per month, or a total of $2000.

3. A bookkeeper at a cost of $250 per month, or a total of $1000.

4. A completely equipped Boom Line Truck having a fair rental value of $250 per month, or a total of $1000.

5. For a pick-up truck, having a fair rental value of $75 per month, making a total of $300.

6. A Dodge panel truck having a fair rental value of $75 per month, making a total of $300.

7. A job office which, for light and telephone, reasonably cost $40 per month, or a total of $160.

That by reason of such delay it was necessary for Montgomery to lay off 17 electricians, and at a later date to re-hire them and bring them back to finish the work; that under the wage and union rules and customs prevailing in said area, in order to bring said men back to work it was necessary to pay them additional time and travel allowances totalling $1394. That by reason of the delay caused by Davidson in said work, Montgomery was unable to work his men efficiently and was caused to lose many man hours for which he was required to pay, thereby increasing his cost of said work to the extent of $5000. The total sum of the increase caused and the expenses resulting to Montgomery by the delays caused by Davidson as claimed by Montgomery amounted to the total sum of $13,554.

Montgomery admits the payment from Davidson of $58,472.81.

Pending the trial and before the taking of testimony commenced it was stipulated both as to the claims made by Montgomery

and as to the claims made by Davidson as follows:

a. Original contract price     $65,000.00
b. Extra work     21,906.99
c. Special work     4,013.81
d. Extra Items     .25.00

    90,945.70

e. Payment in cash $58,472.81
f. Net Service and Materials furnished by Davidson     2,334.53
g. Allowance for wire     367.37

h.     61,174.71     61,174.71

i. Total due     29,770.99

This leaves the following disputed items claimed by Montgomery as being owing from Davidson:

    a. Unit heaters in Mess Hall $110.37.

    b. Wiring condensate pump on scrub deck $296.39.

    c. Another item for $928.26 which is specifically waived by Montgomery.

    d. Damages for delay caused by Davidson $13,554.

Davidson claims credit for the sum of $4,851.55 and claims this amount should be deducted from any sums found due Montgomery.

Of this amount claimed by Davidson, $2,334.53 is conceded by stipulation by Montgomery and it is credited above.

Davidson claims in addition to these admitted items the further sum of $1736.21 for construction of two buildings on the site for Montgomery, and furnishing two stoves. He claims a further credit of $367.37, and this item is conceded and is credited in the statement above.

The Court having considered the items in dispute and taking them up in the order in which they have been heretofore set forth; dealing first with the claims of Montgomery.

    a. Unit heaters in Mess Hall $110. Montgomery's contract required Montgomery to furnish all labor, equipment and material, and to perform all work necessary for the installation of complete inside electrical system and for the complete outside electrical distribution system in connection with the construction of a five thousand man service school area at the United States Naval Training Station, Farragut, Idaho, in complete accordance with plans, specifications and addenda governing the same. As to this item Montgomery was a sub-contractor and he was bound to complete their sub-contract in accordance with the provisions of the main contract and with the contract documents including specifications, so it follows that they are bound to follow the procedure fixed by that contract in the same manner as the main contractor is bound, and they have agreed to perform work undertaken by them subject to all provisions and terms of the contract between Davidson and the Government. They are bound by the terms of that contract. This item was disallowed by the contract officer of the Navy and was included in an appeal made to the Bureau of Yards and Docks where it was likewise refused. This item should be and is disallowed. However at the time of the trial of this case this item was in dispute between the contractor and the Government and if it has been paid to Davidson since the submission of this case or is allowed in the future—any amount allowed and paid on said item will be due and owing from Davidson to Montgomery.

    b. Wiring condensate pump on scrub deck $269.39. This item is disallowed for the same reasons as the preceding item was disallowed, with the same provision for any future settlement.

    c. Another item by Montgomery of $928.26 is specifically waived and is therefore disallowed here.

    d. Damages for delay caused by Davidson $13,554. As stated in the brief of Montgomery, "to find any damages here would be pure guess work and speculation." Montgomery in his brief does not press this claim. It is disallowed.

As to the claims of Davidson as presented to Montgomery for which he claims credit. This has been reduced to $4438.11 and of this amount, $2334.53 and $367.37 have been conceded by Montgomery, leav-

ing in dispute a further sum of $1736.21 claimed by Davidson and denied by Montgomery.

▓ From the evidence it appears to the Court that Davidson was to build these two buildings, or at least the buildings required by Montgomery on the job, at Davidson's own cost and without charge to Montgomery. This was agreed between the parties to the contract. There was no mention of stoves and the item of $79.75, value of two stoves is allowed and the balance of this item of $1736.21 which would be for the construction of the two buildings amounting to $1656.46 will be disallowed.

*W. A. Rushlight Claim:*

The claim of Rushlight is based on a sub-contract with Davidson wherein and whereby for a consideration of $400,000 Davidson employed Rushlight to do and perform a portion of the main contract as follows: "All the plumbing and steam distribution system in connection with the construction of the 5000 man service school area, at U. S. Naval Training Station, Farragut, Idaho, under contract N O Y—6910 in accordance with the plans and specifications." Rushlight claims that it fully and faithfully carried out and completed the contract prior to October 26, 1944; that they performed additional work and furnished additional material not required under their sub-contract, pursuant to the orders, directions and requests of Davidson, at a reasonable and agreed value of $44,236.40, making a total of $444,236.40. Rushlight admits credit due Davidson during the progress of the work of $143.10 and that during the progress of the said work Davidson has made payment to the plaintiff in the total sum of $348,780.18, and that there is a balance due and owing from Davidson to Rushlight in the sum of $95,313.12.

Davidson admits the contract and admits that Rushlight furnished some additional work and material and admits that Davidson has paid to Rushlight the sum of $348,-780.18. Davidson denies the correctness of the credit of $143.10 and denies the remaining claims of Rushlight. Davidson claims that during the course of the work of construction at the request of Rushlight they furnished to Rushlight, goods, wares and merchandise supplies including gasoline and including also naval surplus materials delivered by the Navy to Rushlight, for which Rushlight agreed to reimburse and pay Davidson, and also that Davidson furnished labor and materials in repairing equipment used on the work by said Rushlight which Rushlight agreed to pay for and furnished labor and materials in repairing damage to work already performed on buildings erected and in the course of erection in carrying out the principal contract, which damage was caused by the negligence of employees of Rushlight in carrying out its sub-contract, or was caused by reason of delay in performing the sub-contract which required repairs and changes upon the work already done, that would have been unnecessary had Rushlight performed its work in time and in accordance with its contract and with normal construction procedure, and further in performing, at the special instance and oral request of Rushlight, of certain portions of the work within the terms of the original sub-contract with Rushlight, which it had agreed to perform; a major item of which was the construction of certain man-holes in the steam distribution system at a reasonable cost to Davidson of $15,061.90, and claims that Rushlight is indebted to Davidson for that amount. Davidson claims invoices for all items whether for merchandise and supplies sold and delivered, Navy surplus supplies delivered to Rushlight but charged by the United States to Davidson as the General contractor, work performed or in any other manner arising in connection with the sub-contract, were delivered to said Rushlight and the total amount thereof is the sum of $35,700.90, and Davidson claims an offset for this amount against any sums that may be due and owing Rushlight. Davidson claims that Rushlight was given written instructions on November 23, 1944 to immediately proceed with the work under his contract, and that Rushlight under the terms of his contract agreed to perform its portion of the contract promptly and as and when such portions thereof as were within its sub-contract should be done and performed according to accepted construction practice so as to permit the entire project to be completed within the time limit and

further claims that Rushlight, in disregard of the agreement, failed to furnish the materials and to permit such project to be completed within the time limit and thus delayed Davidson in the completion of the project, to Davidson's damage in the sum of $57,000. This is made up of the following items of damage:

a. Construction of Mess Hall damages by delay, $13,750.

b. Construction of Dispensary building, damage by delay $4,500.

c. Constructing barracks 4, 5, 6, 7, 8, 15, 16, 17, 18, 19 and 20, $14,687.

d. Delay damage to Ships Service Building $680.

e. Delay damage in construction of scrub decks 34 to 40 inclusive $770.

f. Failure to furnish man-power $22,664. —a total of $57,000.

Pending the trial and before the taking of testimony commenced it was stipulated both as to the claims made by Rushlight and the claims made by Davidson as follows:

| | | |
|---|---|---|
| "a. Contract price | $400,000.00 | |
| b. Net change Orders | 15,265.00 | |
| c. Trench rock 130 cubic yards at $15.00 | 1,961.55 | |
| d. Changes in steam distribution | 5,453.00 | |
| e. Extra work and materials | 6,633.16 | |
| f. Invoice S78 admitted | 140.05 | |
| g. Invoice 79 admitted | 231.80 | |
| h. | | 429,684.56 |
| i. Cash payment | $348,780.18 | |
| j. Work and materials furnished | 14,586.54 | |
| k. We admit $193.08 out of invoice 525 | 193.08 | |
| l. We admit $199.01 out of invoice 432 | 199.01 | |
| | | 363,758.81 |
| Due Rushlight | | 65,925.75" |

This leaves the following disputed items claimed by Rushlight as being owing from Davidson:

| | |
|---|---|
| a. Claim for setting fixtures in the Mess Hall | $ 2,427.07 |
| b. Connecting up Mess Hall and Ships Service refrigeration | 231.80 |
| and | 140.05 |
| c. Extra steam distribution | 5,131.20 |
| d. Rock excavation | 1,961.55 |

Davidson claims credit as follows:

| | |
|---|---|
| a. Performing labor and furnishing material including building of 24 manholes | 35,700.90 |
| b. Damages | 57,000.00 |

Of this first amount claimed by Davidson, $14,586.54 under work and material furnished is conceded by stipulation by Rushlight and it is credited above. An additional credit out of invoice #525 of $193.08 and out of invoice #432 of $199.01 is conceded by stipulation by Rushlight and these two items are credited above.

The balance of the $35,700.90 claim is made up of the following items less certain items of profit agreed upon:

| | |
|---|---|
| a. Eat shed in dispensary building | $ 132.53 |
| b. Eat shed in Mess Hall area | 124.16 |
| c. Lean-to on main plumbing building | 207.32 |
| d. Repair roads | 50.82 |
| e. Various repair items | 533.93 |
| f. Various items | 543.19 |
| g. Engineering steam distribution for March | 634.15 |
| h. Engineering steam distribution for May | 601.29 |
| i. Building racks and benches, main office | 1041.20 |
| j. Building 24 manholes | 15061.90 |
| k. Patching concrete | 310.45 |
| l. Patching concrete | 338.56 |
| m. Damages for delay | 57000.00 |

The Court having considered the items in dispute and taking them up in the order in which they have been herein set forth; dealing first with the claims of Rushlight:

a. Claim for setting fixtures in the mess hall $2427.07.

b. Connecting up Mess Hall and Ships Service refrigeration $231.80 and $140.05. These items were not included in the original contract between Davidson and Rushlight, they are matters which came up later and at Davidson's request and are admitted with reservations by Davidson. Rushlight did this work; these items are allowed as against Davidson in full and as against the Bonding Company in the sum of $2585.17; the amounts disallowed against the Bonding Company being Liability Insurance in the amounts of $192.98, $12.06 and $8.71.

■ c. Extra Steam Distribution $5,131.20.

This was extra work caused by a change in the steam distribution plans and was performed by Rushlight. It appears that the charge was reasonable and this is the balance due. This amount is allowed in full as against Davidson. and as against the Bonding Company in the sum of $3028.42. Amounts being disallowed against the Bonding Company being overhead $1249.72; liability insurance $262.44 and profit $590.62.

d. Rock excavation $1,961.55.

What the Court said in regard to the charge by the Rushlight Sprinkler Company for Rock excavation will apply to this charge. There was a settlement on the basis of the payment to Davidson by the Navy, and if at a later date Davidson is allowed a further amount for Rock excavation, then of course, Rushlight should be paid whatever is allowed by the Navy.

■ As to the claims of Davidson against Rushlight, which are disputed:

a. Eat shed in dispensary building $132.53.

b. Eat shed in Mess Hall area $124.16.

c. Lean-to on main plumbing building $207.32.

The evidence clearly shows that it was understood that Davidson was to take care of the building of these structures at no cost to Rushlight. The three items are disallowed.

■ d. Repair roads $50.82.

e. Various repair items $533.93.

f. Various items $543.19.

The above three items can be ruled on together. The Court is unable to find evidence in the record to justify these charges. There is nothing to show that Rushlight was responsible for any damage which made the repairs necessary. The items are disallowed.

■ g. Engineering steam distribution for March $634.15..

h. Engineering steam distribution for May $601.29.

These two items seem to be covered by the contract, as the contract provides that roads and trenches shall conform to the lines and grades established, and nothing is said about Rushlight doing the engineering. These items are disallowed.

i. Building racks and benches main office, $1041.20.

This item covers temporary buildings which were to be furnished by Davidson and is disallowed.

■ j. Building 24 manholes $15,061.90.

This item was testified to at length as the excavation and concrete work for which there was an allowance of $10,000. At one time it was agreed that Davidson would do the work, at another time it was agreed Rushlight would do the work, but always at a cost of $10,000. The Court finds that the contract was that Davidson was to do the work at a cost of $10,000 to Rushlight, and further finds that Rushlight did $7671.30 worth of this work through another subcontractor Davis and Horner. This item is reduced and allowed in the amount of $2328.70.

■ k. Patching concrete $310.45.

1. Patching concrete $338.56.

There is no evidence to show that Rushlight made this patching necessary. The items are disallowed.

m. Damages.

This item is disallowed. Again, it would be "speculation and guess work" to allow any amount for damages.

■ **413**

■ There being conflicting claims between the plaintiffs and the defendants, no interest will be allowed until judgment is entered.

Counsel for the plaintiffs will prepare the necessary findings of fact, conclusions of law and judgment in accordance with the foregoing. Copies will be served on opposing counsel and the original submitted to the Court for approval.

*The Continental Casualty Company:*

The Bonding Company prosecuted a cross action against the defendants C. F. Davidson and C. W. Reid and a third party action against William J. Parker. This is authorized by rule 13(g) and rule 14(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

■ It is the contention of the Bonding Company that C. F. Davidson and C. W. Reid, doing business as C. F. Davidson Company, caused the Bonding Company to execute and deliver a construction payment bond wherein C. F. Davidson, C. W. Reid were principals and the Bonding Company, surety; and that they agreed to indemnify and hold harmless said Bonding Company against all loss, damages, claims, suits, costs and attorneys fees, and expenses whatsoever and any and all liability therefor which said Bonding Company might sustain or incur by reason of executing said bond, the same agreement being made on the part of William J. Parker. This is undisputed and the Bonding Company is entitled to a judgment against the said C. F. Davidson, C. W. Reid and William J. Parker for the amount herein found in favor of the plaintiff and against the Bonding Company.

■ Attorneys fees in the sum of $5,-250 will be allowed counsel for the Bonding Company, and expenses are allowed in the sum of $452.53.

Counsel for the Bonding Company will prepare findings of fact, conclusions of law and decree in accordance with the foregoing, serve copy on opposing counsel and submit the original to the Court for Approval.