## PUBLIC SERVICE COMMISSION OF MARYLAND *v.* BALTIMORE TRANSIT COMPANY

[No. 170, October Term, 1954.]

526

*Decided June 22, 1955.*

*Motion for rehearing, filed July 19, 1955, denied July 27, 1955.*

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles D. Harris,* for appellant.

*Richard F. Cleveland,* for appellee.

DELAPLAINE, J., delivered the opinion of the Court.

The question presented on this appeal is whether the Baltimore Transit Company has the right to issue common stock to executive employees under a restricted stock option incentive plan without the approval of the Public Service Commission.

The case requires construction of the following provision of the Public Service Commission Law, Code 1951, art. 78, sec. 50:

"A common carrier, railroad corporation, street railroad corporation, or other corporation subject to the provisions of this Article, organized or existing, or hereafter incorporated, under or by virtue of the laws of the State of Maryland, may issue stock, bonds, notes or other evidence of indebtedness, payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvements of its facilities, or for the improvement or maintenance of its service, or the discharge or lawful refunding of its obligation, or for the reimbursement of moneys actually expended from income, or from

any other moneys in the treasury of the corporation not secured by or obtained from the issue of stocks, bonds, notes or other evidence of indebtedness of such corporation, * * * or when necessary or desirable, in the discretion of the Commission, to cause the aggregate capitalization to conform to the fair value of the property of such corporation * * *; provided, and not otherwise, that there shall have been secured from the Commission an order authorizing such issue, and the amount thereof, and stating that, in the opinion of the Commission, the use of the capital to be secured by the issue of such stocks, bonds or other evidence of indebtedness is reasonably required for said purposes * * *."

In December, 1952, the board of directors of the Baltimore Transit Company made two proposals to the stockholders: (1) an amendment to the company's charter to make changes in capitalization, and (2) a Restricted Stock Option Incentive Plan.

Under the plan of recapitalization, the number of authorized shares of preferred stock is retained at 250,000, the par and liquidation value to be reduced from $100 to $50 per share, and the holder of each share to receive in exchange therefor one share of new preferred stock and three shares of new common stock; and the 200,000 shares of common stock without par value is changed to 1,000,000 shares of the par value of $1, the holder of each share to receive in exchange therefor one share of new common stock.

The purpose of the stock option plan is to keep the services of executive employees of the company for a reasonable period and to give them additional incentive to promote the success of the company. Under this plan, the board of directors is authorized to select the persons who would participate in it and also to designate the number of shares to be allotted to them. The option price is not less than 95 per cent of the fair market value of the stock at the time of the grant of the

option. In return for the option, the optionee agrees to remain as an employee of the company for at least two years. The maximum number of shares issuable to optionees would be 60,000. The board proposed to issue them out of 130,577 shares which are authorized but unissued.

The board, in its proxy statement, assured the stockholders that both the recapitalization plan and the stock option plan would be subject to the approval of the Public Service Commission. Both of the proposals were approved at a meeting of the stockholders on January 26, 1953.

On January 27, 1953, the company applied to the Commission for approval of the plan of recapitalization. The company pointed out that "no consideration in money or property is to be received by the Company for the issuance of the proposed new preferred stock and new common stock, but the issuance is to be exclusively by way of exchange for existing preferred stock and common stock."

In February, 1953, the Commission declined to pass any order approving the recapitalization. The Commission explained that the change did not need any approval, but that if the law had required approval, the Commission would have given it.

On June 3, 1954, the company applied to the Commission for approval of the stock option plan and for authority to issue shares of stock pursuant to that plan. The company reported that options had been granted to 21 officers and employees, who would have the right to purchase the shares at any time "if the plan meets the approval of the Commission."

When the application was heard on July 9, 1954, the company urged the Commission to authorize the issuance of this stock because one of the purposes for which a public utility may issue stock is "for the improvement or maintenance of its service."

The Commission considered two questions: (1) Can the Commission authorize the plan under its statutory

powers? (2) If it can, is the plan in the public interest? The Commission said that a negative answer to the first question would make a discussion of the second question unnecessary; but, in view of the possibility of an appeal, it decided to express an opinion on both questions.

The Commission answered the first question in the negative. It decided that the purpose of the issue of this stock is not included among the purposes specified in Section 50 of the Public Service Commission Law; and that, even if it were, the capital which the company would obtain therefrom is not reasonably required for "the improvement or maintenance of its service."

The Commission also answered the second question in the negative. On this question the Commission made the following comment:

"It must be remembered that the petitioner is a public utility and that practically every citizen of the City of Baltimore and adjacent territory is a patron of its service. Those patrons have daily contact with the facilities of the Company and while there is much to be desired in the improvement of the services of the Company, that improvement should be in the service and maintenance of the facilities of the Company and not in a Restricted Stock Option Incentive Plan. After a review of the history of the management of the Company under the National City Lines, Inc. and the financial advantages which have accrued to that company we believe that approval of the plan would not be in the public interest."

Accordingly, on July 28, 1954, the Commission entered an order dismissing the application.

The company thereupon filed a bill of complaint in the Circuit Court No. 2 of Baltimore City alleging that the order of the Commission was arbitrary, unreasonable and unlawful. The company prayed the court (1) to set aside the order as void, (2) to direct the Commission

to enter an order approving the stock option plan, and (3) to decree, under the general equity jurisdiction of the Court, that the plan is a legal and proper exercise of the powers of the company under the Maryland Corporation Law.

The Public Service Commission Law provides that any person or corporation subject to any of the provisions of the statute, or any other person or party in interest, shall have the right to commence an action in the appropriate court against the Commission as defendant to set aside or have modified any order of the Commission on the ground that the order is unreasonable or unlawful. Code 1951, art. 78, secs. 16, 74; *Bosley v. Dorsey,* 191 Md. 229, 60 A. 2d 691. The decisions of the Commission are *prima facie* correct and are subject to review. An order of the Commission will not be disturbed except upon clear and satisfactory evidence that it is unreasonable or unlawful, but an order will be set aside if the Commission exceeded its jurisdiction or arbitrarily disregarded the rights of the parties. Code 1951, art. 78, sec. 78; *Public Service Commission v. Byron,* 153 Md. 464, 138 A. 404; *Howard Sports Daily v. Public Service Commission,* 179 Md. 355, 18 A. 2d 210; *Bosley v. Quigley,* 189 Md. 493, 56 A. 2d 835; *Hessey v. Capital Transit Co.,* 193 Md. 265, 66 A. 2d 787, 10 A. L. R. 2d 1114.

As the Commission refused to approve the plan, the company took a different position in the Court below. Its new contention was that the purpose of the plan is not one of the purposes specified in Section 50 of Article 78, the Public Service Commission Law, and accordingly the Commission has no right to approve it; but the company does have the right to issue the stock under Article 23 of the Code, the Maryland Corporation Law, without approval of the Commission.

On February 14, 1955, the Court, accepting the company's argument, passed a decree which adjudged that the Commission is without jurisdiction to either approve or disapprove the stock option plan and the issuance of

stock thereunder, and accordingly dismissed the bill of complaint, but further adjudged that the company has the power to issue the stock under the Corporation Law.

The Commission approved of the dismissal of the bill of complaint, but disapproved of the adjudication. It has appealed here from all of the decree except the part dismissing the bill.

As we have stated, the board of directors of the company informed the stockholders in January, 1952, and again in June, 1954, that the issue of stock under the stock option plan would be subject to the approval of the Public Service Commission. The company now explains that it would have been imprudent to assume in advance that the Commission had no authority over the issue; but that, since the Commission has ruled that it could not approve the plan under any circumstances, alternative prayers were put in the bill of complaint.

The company now concedes that the Commission has no authority to approve any issue of stock under the stock option plan. It also concedes that the Commission has no authority over the issue of securities for any purpose not specified in Section 50 of Article 78, entitled "Public Service Commission." But it argues that while Section 50 is a grant of authority to the Commission over the issue of securities to raise capital for the purposes specified therein, there is no statement in the statute that a public service corporation cannot issue securities for any purpose other than those mentioned in Section 50. It argues that Article 23 grants power to all corporations except as specifically qualified by statutes relating to special classes of corporations; and that Section 50 of Article 78 does not expressly grant exclusive authority to the Public Service Commission over the issue of all securities.

The company also states that it had been the practice of a number of Maryland corporations for some years to offer stock options to employees. It has called attention to the provision of the Corporation Law that every Maryland corporation has the power "to adopt and carry

into effect employee and officer benefit plans." Code 1951, art. 23, sec. 9(a)(11).

Moreover, in 1950 Congress gave impetus to the popularity of stock options by the enactment of a provision that if a share of stock is transferred to an individual pursuant to his exercise of a restricted stock option, no income shall result at the time of the transfer with respect to such share. Internal Revenue Code, 1954 Ed., sec. 421. According to a survey made several years ago, one-sixth of the corporations having securities listed on the New York Stock Exchange had adopted stock option plans, most of which had been prepared to take advantage of the 1950 amendment. *Arthur H. Dean, Employee Stock Options,* 66 Harvard Law Review 1403, 1449.

The original Act creating the Public Service Commission was a very comprehensive one and the Commission was given very broad powers. Laws 1910, ch. 180.

Section 27 of the Act provided in part as follows:

"That a common carrier, railroad corporation, street railroad corporation, or other corporation subject to the provisions of this Act, organized or existing, or hereafter incorporated, under or by virtue of the laws of the State of Maryland, may issue stocks, bonds, notes or other evidence of indebtedness, payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance, extension or improvement of its facilities, or for the improvement or maintenance of its service, or for the discharge or lawful refunding of its obligations; provided, and not otherwise, that there shall have been secured from the Commission an order authorizing such issue, and the amount thereof, and stating that, in the opinion of the Commission, the use of the capital to be secured by the issue of such stocks, bonds or other evi-

dence of indebtedness is reasonably required for the said purposes * * *."

Other sections of the Act made restrictions upon the powers of gas and electric companies, telephone and telegraph companies, and water, refrigerating and heating companies. Laws 1910, ch. 180, secs. 34, 39, 42.

The Act creating the Public Service Commission was copied to a large extent from the Public Service Commission Law of New York. Where a particular statute has been adopted in one State from the statute of another State, after a judicial construction has been given to it in the other State, it will be presumed that the construction was adopted with it. *James v. Appel,* 192 U. S. 129, 24 S. Ct. 222, 48 L. Ed. 377. Here the decisions rendered by the New York Court of Appeals following the adoption of the Maryland Public Service Commission Law, although they are not technically binding as precedents, are entitled to respectful consideration.

In *People ex rel. Delaware & Hudson Co. v. Stevens,* 197 N. Y. 1, 90 N. E. 60, the Court of Appeals of New York held that the New York Public Service Commission Law providing for the approval by the Commission of the issuance of bonds by the Public Service Commission aims to correct the evils resulting from the issuance of bonds by public service corporations, without actual consideration therefor, and for the purpose of enriching the officers at the expense of investors, by enabling the Commission to prevent the issue of such bonds where it is found after investigation that they are not for any of the purposes of the corporation designated by the statute and reasonably required therefor.

In *People v. County Transportation Co.,* 303 N. Y. 391, 103 N. E. 2d 421, the Court held that the statute authorizing a common carrier to issue stocks or evidence of indebtedness after securing from the Public Service Commission an order authorizing such issue had as its paramount design the protection of the public. It aimed not only to protect the investor, but also to make certain that there shall not be provided, through improper issue

of securities, a motive for crippling the public service or a basis for demanding extortionate returns.

In *Public Service Commission v. New York & Richmond Gas Co.*, 244 N. Y. App. Div. 398, 279 N. Y. S. 824, 827, the Supreme Court of New York held (1) that no gas or electric corporation has the right to issue stock for any purpose whatever without the consent of the Public Service Commission, and (2) that the Commission can give its consent for the issuance of stock only for purposes designated in the statute.

It is our opinion that the Baltimore Transit Company has no right to issue any securities without the approval of the Commission. We are also of the opinion that the Commission can approve the issuance of securities only for the purposes designated in Section 50.

The Commission stated on this appeal that it has always been understood by the Commission and by all interested parties during the period of 45 years since the enactment of the original Public Service Commission Law that the statute prohibits the issuance of any securities by a Maryland public utility except for the purposes designated in the statute, and then only with the Commission's approval.

In *Public Service Commission v. Consolidated Gas, Electric Light & Power Co.*, 148 Md. 90, 97, 129 A. 22, this Court held that a stock reorganization plan of a public service corporation which preserves the relative positions of the stockholders by substituting new stock for old stock does not require the approval of the Public Service Commission; but shares of stock of such a corporation which are to take the place of unissued shares and constitute potential capital cannot be issued without the approval of the Commission.

We hold that if the Commission in the instant case meant that it lacks the power to approve any stock option plan, such decision is incorrect, because it is possible that there could be such a plan that would be for the improvement or maintenance of the company's service and in the public interest. On the other hand, if the Commis-

sion disapproved of the particular plan for the reason that it would not be for the improvement or maintenance of the company's service and not in the public interest, then the Court acted incorrectly in setting the finding aside. As we have said, the decisions of the Commission are *prima facie* correct, and there is no clear and satisfactory evidence in the record in this case to warrant the Court in holding that the Commission's decision was unreasonable or unlawful, or that the Commission exceeded its jurisdiction or arbitrarily disregarded the rights of the parties.

The Baltimore Transit Company stated that if all of the options which have already been granted were exercised, the amount which the optionees would be required to pay to the company for their shares during the next six years would be more than $160,000. As this would be new capital, the company has no power to issue the stock without the approval of the Commission.

We call attention to the revised and recodified Public Service Commission Law, which took effect on June 1, 1955. This complete revision was the result of the work of a Commission appointed by the Governor, pursuant to a Resolution of the House of Delegates passed at the 1951 session of the Legislature, to revise and recodify the laws concerning the Public Service Commission. The Act explicitly provides that hereafter no public service company shall, without the prior authorization of the Commission, issue stocks, bonds, securities, notes, or any other evidence of indebtedness payable in whole or in part more than twelve months after date of issuance. Laws 1955, ch. 441, sec. 23.

The Revision Commission undertook to carry out the recommendation of the Resolution of the House of Delegates that the Commission revise and recodify and not change the substance of the law. The Commission made no announcement that the provision in question was a change in substance. This fact is a strong indication that the 1955 Act reaffirms what was implicit in the prior law.

For the reasons we have stated, we will affirm the dismissal of the bill of complaint but reverse other parts of the decree.

> *Decree affirmed in part and reversed in part, and case remanded for the passage of a decree to conform with this opinion, with costs to appellant.*