253 Md. 60 (1969)
251 A.2d 864
WILLIAMS CONSTRUCTION CO., INC., ET AL.
v.
CONSTRUCTION EQUIPMENT, INC.
[No. 187, September Term, 1968.]
Court of Appeals of Maryland.
Decided April 2, 1969.
*61 The cause was argued before HAMMOND, C.J., and MARBURY, BARNES, SINGLEY and SMITH, JJ.
Morton A. Sacks, with whom were Richard B. Moore and Cable, McDaniel, Bowie & Bond on the brief, for appellants.
Nathan Patz for appellee.
SINGLEY, J., delivered the opinion of the Court.
Chapter 10 of the Laws of 1959[1] enacted what has come to be known as Maryland's "Little Miller Act", Maryland Code (1957, 1964 Repl. Vol.) Art. 90 § 11 (the Act). Any contractor who is awarded a public works contract in the amount of more than $5,000 is required by § 11 (a) of the Act[2] to furnish the State or political subdivision with a performance bond for the protection of the public body and "a payment bond * * * for the protection of all persons supplying labor and materials to the contractor or his subcontractor in the prosecution of the work provided for in the contract. * * *"
In 1962, the appellant, Williams Construction Co., Inc. (Williams), which had been awarded the prime contract for the construction of a portion of the Northeastern Expressway (now John F. Kennedy Memorial Highway) in Harford County, arranged for a payment bond in the penal sum of $9,651,059.70 *62 (the amount of the contract) to be written by the appellant, Fireman's Fund Insurance Company (Fireman's Fund). The bond referred to the Act, and provided:
"* * * [T]he condition of this obligation is such that if the [Principal] shall promptly make payments to all persons supplying labor and/or material to the Principal and to any Subcontractor of the Principal or any Subcontractor of the Principal in the prosecution of the work provided for in said Contract * * * then this obligation shall be void; * * *"
Thereafter, Williams entered into a subcontract with J.G. Prentis & Co., Inc. (Prentis) for the erection of three bridges, and Prentis leased certain equipment to be used in the performance of the subcontract from the appellee, Construction Equipment, Inc. (Construction Equipment). The leased equipment was operated by Prentis' employees. When Construction Equipment's charges aggregating $32,578.02[3] were not paid by Prentis, Construction Equipment gave notice as required by the Act and then instituted suit in the Circuit Court for Baltimore County against Williams and Fireman's Fund. Williams and Fireman's Fund moved for summary judgment, alleging that a lessor of equipment is not a person "supplying labor and materials * * * in the prosecution of the work" and was therefore not protected by the Act. The motion for summary judgment was denied, as were a motion for a directed verdict at the end of the entire case and a motion for a judgment n.o.v., which raised the same question. This appeal was taken from a judgment absolute for $32,578.02 entered in Construction Equipment's favor against Williams and Fireman's Fund.
Construction Equipment's argument has the simplistic appeal of a syllogism: the language of Maryland's Act, "all persons supplying labor or materials to the contractor or his subcontractor in the prosecution of the work provided for in the contract, *63 in respect of which a payment bond is furnished * * *" is substantially identical with that of the Miller Act, 49 Stat. 793, 40 U.S.C.A. 270 a (2). Equipment rentals can be recovered under the Miller Act. U.S. v. Campbell, 293 F.2d 816 (9th Cir.1961) cert. den. 368 U.S. 987; U.S. v. Nat'l Surety Corp., 268 F.2d 610 (5th Cir.1959); Continental Cas. Co. v. Clarence L. Boyd Co., 140 F.2d 115 (10th Cir.1944); U.S. v. Chester Const. Co., 104 F.2d 648 (2d Cir.1939). The interpretation given a statute in the jurisdiction in which it was first adopted is presumed to have been adopted with it, or should be given great weight, relying on Public Service Comm'n v. Balto. Transit Co., 207 Md. 524, 114 A.2d 834 (1955); Continental Oil Co. v. Horsey, 177 Md. 383, 385, 9 A.2d 607 (1939); Heyn v. Fidelity Trust Co., 174 Md. 639, 197 A. 292 (1938); Zell v. Safe Deposit & Trust Co., 173 Md. 518, 196 A. 298 (1938). Therefore, equipment rentals can be recovered under the Maryland Act.
Appealing as this argument is, it will not survive a critical examination made in the light of our prior decisions. The statutory progenitor of the Miller Act was the Heard Act, 28 Stat. 278, 40 U.S.C.A. 270, passed in 1894. It provided for one bond to protect both the United States and those furnishing labor or materials for the prosecution of the work, so that subcontractors necessarily shared pro rata with the United States. An amendment of 1905, 33 Stat. 811, merely provided procedural mechanics, giving a preferred position to the government, which had previously shared ratably with subcontractors. The pertinent language of the Heard Act was that the contractor's bond must include the obligation to "promptly make payments to all persons supplying him * * * with labor and materials in the prosecution of the work provided for in such contract * * *." The Supreme Court had before it in 1917 in Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 61 L.Ed. 1206, 37 S.Ct. 614 (1917) the question we now have. It said (Brandeis, J.):
"The purpose of the act was to provide security for the payment of all persons who provide labor or material on public work. This was done by giving a claim under the bond in lieu of the lien upon land and buildings *64 customary where property is owned by private persons." 244 U.S. at 380.
and held:
"The specific objection made to the claim of the United States Equipment Company, for rental of cars, track and equipment used at the Naval Training Station and the expense of loading the plant and freight thereon to and from the station is also unfounded. The Surety Company contends that this is not supplying `labor and materials.' The equipment was used in the prosecution of the work. Material was thus supplied, although, a loan serving the purpose, no purchase of it was made." 244 U.S. at 383.
By Ch. 721 of the Laws of Maryland of 1910, "An act to amend Section 32 of Art. 91 of the Code of 1904 * * * subtitle Public Roads * * * and requiring bonds given by contractors to cover claims for work done and materials provided in the construction of roads," it was provided that contracts should be let by the then State Roads Commission by competitive bidding and awarded by formal contract under which the successful bidder must execute and deliver a bond for the contract price in which the obligors bind themselves "to the payment of all just debts for the labor and materials incurred by the bidder in the construction and improvement of the road contracted for."[4] This provision came before this Court in State v. Nat'l Surety Co., 148 Md. 221, 128 A. 916 (1925), where Gwynns Falls Quarry had leased to a subcontractor a steam shovel which the subcontractor used in the construction of a road. Gwynns Falls, being unpaid, sued the surety on the bond. Our predecessors reached a result diametrically opposite that reached by the Supreme Court in Illinois Surety. Although the Supreme Court had said the phrase "supplying * * * labor and materials in the prosecution *65 of the work" encompassed the rent owed by a subcontractor on leased equipment, this Court concluded that neither the language of the statute nor the phrase used in the bond, "furnishing material or performing labor in and about the construction of said roadway" included the rent of the shovel. The Court, speaking through Judge Urner, said and held:
"* * * In Basshor v. Balto. & O.R.R. Co., 65 Md. 99 [3 A. 285 (1886)], it was held that machinery and appliances sold to a contractor, for crushing and carrying stone for the building of concrete bridges, were not materials within the purview of the provision in the mechanics' lien law that a lien was obtainable for materials furnished `for or about' such construction. `The machinery thus used,' the court said, `is the plant of the contractor, and can in no sense be said to be materials furnished or used in building the bridges.' In Gill v. Mullan, 140 Md. 1, [116 A. 563 (1922)], it was held that oil and fuel used in the operation of a steam shovel, and its depreciation, did not constitute materials for the purposes of the mechanics' lien law. It is said in 18 R.C.L. 926: `As a general rule, one who rents or hires teams, tools or other appliances, to a contractor for use in erecting a building or other structure has, under mechanics' lien laws, no lien upon the building or structure for the rent or hire of the teams or appliances unless specifically authorized by statute.' The case of Basshor v. Balto. & O.R.R. Co., supra, is cited in support of a statement to the same general effect in 27 Cyc. 46.
"The steam shovel leased by the appellant in this case was merely an implement utilized by the lessees in the work for which they were employed. It formed a part of their equipment for the business in which they were regularly engaged. The monthly rent accruing to the appellant was payable regardless of the extent to which the steam shovel was actually used or of the place where it was operated. The appellant's claim is obviously not for labor performed on the highway, since the work in which the leased machine was used *66 on the road was done exclusively by the lessee, and we think it also clear that the use and depreciation of the steam shovel, and its transportation to the appellant, should not be regarded as materials furnished in the construction of the roadway, within the terms of the contractor's bond and of the statute by which it was prescribed." 148 Md. at 224-25.
In 1935, when the Miller Act superseded the Heard Act, the really significant change was one of structure. The Miller Act required two bonds: a performance bond for the protection of the government and a payment bond which protected the subcontractor, and his workmen and suppliers, whether the subcontractor was paid or not. For the technique of one suit in which all creditors could intervene and the government was preferred, there was substituted the idea of separate actions on the payment bond: a race of diligence which the subcontractors could run until the bond was exhausted. See, U.S. v. Aetna Casualty & Surety Co., 297 F.2d 665 (2d Cir.1962); Fiedler, The Heard Act and the Miller Act After Fifty Years, 12 Ins. Counsel J. 22 (April, 1945).
The Miller Act language as to the payment bond was that it should be for "the protection of all persons supplying labor and materials [to the contractor or his subcontractor] in the prosecution of the work * * *." Since this language is substantially similar, if not identical, to that of the Heard Act, the federal courts have naturally given it the meaning the Supreme Court gave the Heard Act language. This, however, is not the meaning that this Court gave substantially the same language in National Surety, supra, eight years after the Supreme Court decision in 1917. Although in 1959 our Legislature adopted the Miller Act technique of two bonds and the Miller Act language as to materials supplied and other matters, the legislative intent to be ascribed is not the usual aid to construction test used when other aid is lacking  that the words adopted from another jurisdiction usually are given the meaning previously given them judicially in the other jurisdiction.
This Court had already given those particular words another meaning in National Surety, relying in large part on the reason *67 that recovery could not be had for rentals under the mechanics' lien law, an analogous and complementary remedy, as the Supreme Court and this Court have recognized. See Peerless Ins. Co. v. Prince George's County, 248 Md. 439, 442, 237 A.2d 15 (1968) ("* * * Although the statute giving laborers and materialmen the right to mechanic's liens is not controlling here, the similarity of purpose between it and Article 90, Section 11, is so close that an analogy can be drawn."); Ruberoid Co. v. Glassman Constr. Co., 248 Md. 97, 106, 234 A.2d 875 (1967) ("See and compare the Maryland Mechanics' Lien Law, Article 63, Section 1, and cases construing it annotated at 39 A.L.R.2d 394, 401, with the Article 90, Section 11 payment bond which is required for the purpose of protecting materialmen on public projects where they have no lien on the work done."); and Montgomery County Bd. of Ed. v. Glassman Const. Co., 245 Md. 192, 201, 225 A.2d 448 (1967) ("There is no mechanic's lien for work done for or materials supplied to public buildings, but the bond required by the statute is intended to give substantially similar protection. The purpose of the bond, based on the statute, is to protect subcontractors and materialmen on State or other public projects where they have no lien on the work done").
Recovery for rentals still cannot be made under mechanics' lien law. Giles & Ransome, Inc. v. First Nat'l Realty Corp., 238 Md. 203, 208 A.2d 582 (1965). To ascribe to the Maryland Legislature in its adoption of the Act an intent to make equipment rentals recoverable under the bond would not only reverse legislatively the National Surety case without any hint of legislative intent to do so, but it would destroy the symmetry which has existed for years between rights under the mechanics' lien law and rights under a public works bond. If the Legislature intended such a change in the bond law, why did it not change the lien law to make rentals lienable?
We must ascribe to the Legislature an intent to have words mean what this Court has said they mean, rather than to have them mean what the Supreme Court may have said they mean, particularly since our predecessors chose not to follow the Supreme Court.
"A construction of a statute by the state from which *68 it was adopted is entitled to no greater consideration than previous decisions of the highest court of the adopting state, and will not be applied over a decision to the contrary previously rendered by the latter court construing a statute substantially similar, resulting from a different view of some general principle of law or public policy; and, where the courts of the adopting state for many years have given their own interpretation of the adopted statute, the presumption that the foreign interpretation at variance therewith was adopted with the act does not obtain." 82 C.J.S. Statutes (1953) § 373 a, at 867.
We have previously held that a construction arrived at in another jurisdiction, subsequent to enactment by our Legislature cannot be regarded as having been impliedly adopted. Mundey v. Unsatisfied Claim & Judgment Fund Bd., 233 Md. 169, 195 A.2d 720 (1963).
It is true that in Montgomery County Bd. of Ed. v. Glassman Const. Co., supra, 245 Md. 192, we gave the notice provisions of the Maryland Act the meaning given similar Miller Act provisions by the federal courts and based our resolution of a question of whether the cost of repairs was within the bond coverage on analogy to Miller Act cases, but these were questions which had not previously occupied the attention of this Court.
Finally, Construction Equipment makes the point that Williams' and Fireman's Fund's motions were properly denied, since all of them  whether for summary judgment, for directed verdict, or for judgment n.o.v.  were couched in general terms and failed to differentiate among equipment rentals, haulage and repairs and the cost of purchased materials. Since it would appear to be conceded that the cost of purchased materials in the amount of $46.95 would have been recoverable under the bond, it is argued that the case could not be taken from the jury when there is any evidence to support the claim, Fisher v. Finan, 163 Md. 418, 163 A. 828 (1933) or when some damages will be assessed. M & R Contractors & Builders, Inc. v. Michael, 215 Md. 340, 138 A.2d 350 (1958).
*69 We cannot regard this as tenable under our view of the case, because we believe that the equipment rentals were not recoverable as a matter of law and that the court should have so held at the conclusion of the hearing on the motion for directed verdict. That the several components of the claim received the court's attention is supported by the colloquy which appears in the record:
"(THE COURT): For the record, the defendant has moved, at the end of the entire case for a directed verdict for the defendant on the ground, * * * the rental of equipment is not covered by Article 90, Section 11, under the Maryland law.
"(MR. CADIGAN) [counsel for Williams]: That's correct.
"(THE COURT) * * * The Court has decided to submit to the jury the question of whether or not the labor or materials and equipment were furnished by the plaintiff to J.G. Prentis for the period from May 10, 1962 through July 17th, 1963 and the amount thereof. The Court is construing the Maryland law in a vacuum because the Court's attention has not been called to any Maryland case which has construed it, however, the statute is similar to the federal law, which has been construed by the Supreme Court and this Court has decided to follow the Supreme Court's interpretation of the federal interpretation, rather than draw upon the decision of the Maryland Court of Appeals which refers to a mechanics' lien, and whether that is an error or not, it can be corrected on appeal, if it was an error, but for the purposes of this case the Court will instruct the jury that the rental equipment is included."
It was at this stage of the proceedings that the court should have directed a verdict for the defendant with respect to $32,481.07 of the total amount in controversy, this being the aggregate amount of charges for equipment rental and haulage and repair, and should have permitted the case to go to the jury as to the remaining amount of $46.95, being the charge for materials *70 delivered to the job site, for it seems to be conceded that this amount is recoverable under the bond. Judgment in that amount will be entered on remand.
Judgment reversed; case remanded for the entry of a judgment in favor of the appellee, Construction Equipment, Inc. and against the appellants, Williams Construction Co., Inc. and Fireman's Fund Insurance Co., for the sum of $46.95 with interest and costs below. Each party to pay its own costs on appeal.
NOTES
[1] As amended by Ch. 15 of the Laws of 1963, Ch. 262 of the Laws of 1967 and Ch. 525 of the Laws of 1968. The amendments are largely procedural in nature and are not significant in this case.
[2] The Act, § 11(a)(2) is substantially identical with the corresponding provision of the Miller Act, 40 U.S.C.A. § 270 a (2). Montgomery County Bd. of Ed. v. Glassman Const. Co., 245 Md. 192, 225 A.2d 448 (1967).
[3] All of this was for equipment rental or for haulage or repair of the leased equipment, except for a charge of $46.95 for carbide bits and covered wire, which appear to have been materials used on the job.
[4] By Ch. 127 of the Laws of 1918, Bagby's Annotated Code (1924) Art. 90 § 14, Maryland had adopted its own counterpart of the Heard Act and required that performance bonds given the State bind the obligors "to the payment of all just debts for labor and materials incurred, through subcontract or in any other manner * * *." This was repealed by Ch. 10 of the Laws of 1959. Maryland v. W.E. Dunn Const. Co., 191 F. Supp. 297 (D. Md. 1961).